UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DAVID J. COTTRELL | Case No. 18 CR 704<br><br>Honorable Michael T. Mason |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR DETENTION OF DEFENDANT DAVID J. COTTRELL**

This memorandum of law is submitted in support of the government's motion to detain the defendant based on danger to the community and risk of flight. A hearing on the motion is set for Tuesday, October 23, 2018 at 1:00 p.m.

For nearly three years, defendant David J. Cottrell forced a young teenage girl ("Minor A") to create child pornography for him by threatening to disseminate sexually explicit photos and videos of her on the internet.[1] Minor A fell into defendant's trap in 2014, when she was thirteen years old and began exchanging messages with him on her phone, thinking that she was anonymous. Defendant, who was 24 years old at the time, introduced himself as "Dave" and asked her to send him semi-nude photos, which she did.

A few months later, defendant told Minor A that he knew her real name, her address, what middle school she went to, the names of everyone in her family, and

---

[1] The facts regarding Minor A in this memorandum are based on the following: (1) Grand Jury testimony of Minor A; (2) photographs showing the contents of communications between the defendant and Minor A; (3) copies of some of the sexually explicit images and video created by Minor A at defendant's direction; and (4) interviews, subpoenaed records, and seized material establishing defendant as the person who communicated with Minor A.

1

her parents' jobs. Knowing that she was a minor, defendant demanded that Minor A take more photos and videos of herself at his direction, and threatened to post and distribute his collection of her sexually explicit photos if she did not comply. Through the cell phone applications Kik and Snapchat, defendant terrorized Minor A on a near-daily basis until she was sixteen, when her parents discovered the crime in July 2017.

Defendant told Minor A that she could never escape his extortion because he had saved her images on "both a physical hard drive" and "encrypted copies in the cloud." Because "cloud" data storage is accessible through the internet, there is no way to ensure that defendant will not access and disseminate Minor A's images while on bond.

No conditions of release will reasonably assure the protection of Minor A. To the contrary, it is a certainty that Minor A will be harmed by pretrial release of defendant. Pretrial release will allow the defendant to hold his threats over Minor A's head, and perpetuate the psychological harm he has already inflicted, simply by being out of prison where the internet is accessible. Defendant controlled Minor A's life for nearly three years, and contacted her again after the investigation began. If let out on bond, defendant could contact Minor A again and distribute her images on the internet, in an effort to retaliate and cripple her psychologically while this case is pending. Given that defendant is facing a 15-year mandatory minimum sentence, there is a risk that he will flee from prosecution as well.

I.  **LEGAL STANDARD**

The Bail Reform Act, codified at Title 18, United States Code, Section 3142, establishes a set of factors that the Court may consider in its detention determination, including the nature and circumstances of the offense charged, the weight of the evidence against the defendant, and the history and characteristics of the defendant. 18 U.S.C. § 3142(g). If, after a detention hearing, the Court finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety *of any other person* and the community, [the Court] shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1) (emphasis added).[2] The meaning of "safety of any other person" in Section 3142(e)(1) is not limited to physical harm or violence. *United States v. Schenberger*, 498 F. Supp. 2d 738, 742 (D.N.J. 2007) ("The concept of 'safety' may include non-physical harm.").

Under 18 U.S.C. § 3142(e)(3)(E), there is presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of the community if there is probable cause to believe that a defendant committed an offense involving a minor victim under 18 U.S.C. §§ 2422, 2251, or 2252A(a)(1). That presumption applies in this case because those statutes are charged by indictment (Counts One, Three, Four, Five, and Six). This presumption "continues to weigh in the balance against bail even after the

---

[2] With respect to risk of non-appearance, the government bears the burden of proof by a preponderance of the evidence; with respect to danger to the community, the government bears the burden of proof by clear and convincing evidence. *United States v. Portes*, 786 F.2d 758, 765 (7th Cir. 1985); *United States v. Daniels*, 772 F.2d 382, 383 (7th Cir. 1985).

3

defendant meets his burden of producing some evidence to rebut the presumption." *United States v. Diaz*, 777 F.2d 1236, 1238 (7th Cir. 1985). The Federal Rules of Evidence do not apply at a detention hearing and the government may proffer evidence. *See* Fed. R. Evid. 1101(d)(3); 18 U.S.C. § 3142(f); *United States v. Salerno*, 481 U.S. 739, 743 (1987).

## II. NATURE AND CIRCUMSTANCES OF THE OFFENSE

Defendant is charged with inducement of a minor to engage in illegal sexual activity under 18 U.S.C. 2422(b) (Count One), extortion under 18 U.S.C. § 875(d) (Count Two), attempt to produce child pornography under 18 U.S.C. § 2251(a) and (e) (Count Three), transportation of child pornography under 18 U.S.C. § 2252A(a)(1) (Counts Four and Five), production of child pornography under 18 U.S.C. § 2251(a) (Count Six), and possession of child pornography under 18 U.S.C. § 2252A(a)(5)(B) (Count Seven). (Doc. 1.)

### A. Defendant coerced Minor A to produce child pornography through extortion.

When Minor A was in seventh grade, she met defendant though the internet chat site "Omegle," where defendant was soliciting females to talk about sex. Minor A and defendant began communicating on the "Kik" messaging application, which allows users to communicate anonymously, and later switched to Snapchat. Defendant, who was attending law school in New York City at the time, told Minor A that his name was Dave and that he lived in New York. Minor A recalled that one of the Kik usernames used by "Dave" was "sevendollarcab." Minor A used a pseudonym and told defendant that she was eighteen years old, although she was

thirteen at the time. Defendant asked Minor A to send him pictures of herself in her underwear, and then asked for topless photos. Minor A sent him the photos, thinking that she was anonymous, and continued communicating with defendant on a regular basis.

In the fall of 2014, shortly after starting eighth grade, defendant told Minor A that he knew she was much younger than eighteen. Defendant told Minor A he knew her real name, her address, her parents' and sister's names, her parents' jobs, and the middle school she attended. Defendant threatened to post her photos on the internet and send them to her family if she did not comply with his demands for specific sexual photos and videos.[3]

Terrified by defendant's threats, Minor A complied with defendant's demands by creating sexually explicit photos and videos of herself and sending them to him. Defendant continued to contact Minor A on nearly a daily basis, demanding more graphic photos and videos and making more specific threats, thereby increasing her fear of exposure. Defendant also exploited Minor A's fear of getting in trouble with her parents by telling her, for example, "[o]ne bad move and ur parents get a letter from concerned parents about their daughter distributing porn to other children."

Defendant made Minor A enter "agreements" entitling him to "use" her and obligating Minor A to "service" him, or else she would face "punishments" such as

---

[3] For example, defendant told Minor A that if she did not comply, he would put a picture of her body with no face on the internet, then a picture of her body and face together, and then a picture showing her body and face with her name attached.

5

having to make even more humiliating and graphic videos.[4] As defendant put it, "If I want you to fucking service me, and you do not, you will accept whatever punishment I decide and service me the very next fucking day if I so desire. NO FUCKING EXCUSES." Defendant sometimes made Minor A stay up late at night making videos for him, sending her "scripts" and insisting that she perform to his satisfaction, leaving her exhausted the next school day. On January 7, 2017, defendant told Minor A:

> You are being FUCKING PERFECT tomorrow. I'm fucking serious cunt. PERFECT. You better make my cock fucking explode over and over by the high quality porn you send me. AND right now you're going to dump some fucking shit you already have saved so I have jerkoff material tonight

A few times, defendant made Minor A leave class during school to take a picture of herself in the bathroom. In an October 27, 2016 exchange, defendant messaged Minor A while she was in math class, telling her "I fucking own you and don't tolerate disobedience."

Defendant's extortion of Minor A continued until July 4, 2017, when Minor A's parents discovered defendant's threats on her phone. Minor A's parents and law enforcement photographed the chats and photos exchanged with defendant on Minor A's Snapchat application. At this time, defendant was using the Snapchat username b88785, which he had used to communicate with Minor A since April

---

[4] For one "agreement," defendant, who had taken Contract Drafting in law school, told Minor A "I am the final arbiter on any ambiguities raised in the agreement." This agreement entitled defendant to "use periods" of "your complete submission lasting generally 24-36 hours, but will not end until I cum at least once." Defendant instructed Minor A to "[a]ccept the deal by saying 'Yes sir, I agree. I will be a good little slut for you and follow the rules.'"

6

2016. Law enforcement took custody of Minor A's phone and recovered a nearly 5-minute video in which she created child pornography of herself, at defendant's direction, on or about July 2, 2017 (Count Six). Three and a half minutes into the video, Minor A starts crying as she is forced to perform for defendant.

### B. Defendant told Minor A that he would never be caught because her images were encrypted.

During the course of the extortion between 2014 and 2017, Minor A threatened to report defendant to the police. Defendant responded that no one would ever catch him because he had encrypted all her files. Defendant told Minor A on Snapchat "If u think I don't have that shit backed up u a fool" and "Got both a physical hard drive an [sic] encrypted copies in the cloud." Defendant bragged to Minor A about his computer expertise, telling her "I've actually contemplated before about how in a post-apocalyptic future I could sell porn for food & supplies," adding "[s]o if the zombies come there are gonna be some survivors jerking it to you in caves." Defendant also threatened to post Minor A's images on "dark web" sites for "revenge porn" like "Pink Meth," where he would be harder to trace. Defendant's message to Minor A was clear: her images would always be under his control and she was powerless to stop him.

### C. Defendant finds Minor A again.

After Minor A's communications were cut off in July 2017, defendant deleted his Snapchat account. In early September 2017, defendant was able to find Minor A's new Snapchat user name by posing as her friend from school on Snapchat. Defendant told Minor A that if she did not start cooperating again, he would start

7

by sending her pictures and videos to ten of her friends, and then the next day to 25 friends, then to her principal, and then he would post it online. Minor A recalled that defendant told her that "it was like a physical need for him" and "he would not stop no matter how much [Minor A] wanted it to." In the course of resisting his demands, Minor A told defendant that her parents had found out and that law enforcement was looking for him. Defendant first responded that he did not believe her, but then became uncharacteristically nice and told Minor A that he would leave her alone.

> **D. The government executes a search warrant and finds multiple encrypted devices and child pornography in defendant's home.**

On June 14, 2018, agents executed a search warrant on defendant's home in Niles, where he was living with his mother (the "Niles Residence"). Law enforcement recovered three encrypted electronic devices (a Macbook, a Western Digital external hard drive, and a thumb drive) and three password protected devices (an iPad and two iPhones) from defendant's bedroom. As is his right to do, defendant declined to provide the passcodes to those devices through an attorney proffer.

Agents also recovered a Western Digital hard drive with serial number WXE808AZ1820 from the Niles Residence, which was not encrypted, and it contained child pornography. The government confirmed the identity of a child pornography victim, Minor B, in photos on the hard drive.[5] The hard drive also

---

[5] Minor B is now over eighteen years old, but was a minor at the time the photos of her were taken.

contained three Microsoft Word documents, created in September 2008. Two of those documents contain messages to Minor B written by defendant. In the first document, defendant addresses Minor B by name, introduces himself as "Dave," and explains that he just started college at University A (which is where defendant started college in the fall of 2008).

In the messages, defendant explains that he has "compiled quite a little cache of information" on Minor B and offers to converse with her by email or instant messenger about it. In the second message, defendant offers to "help" Minor B remove her child pornography from the internet, stating "you have on your side the fact that you are underage in those pictures. Not many webmasters will be willing to argue when confronted with the fact they are hosting child pornography."[6]

A third Word document contains what appears to be the defendant's "cache of information" on Minor B, including her date of birth, email addresses, online user names, her mother's maiden name, IP address, links to local news articles related to Minor B, and links to where child pornography of Minor B can be found on the internet. In Count Seven of the indictment, defendant is charged with possession of the child pornography of Minor B.

### III. THE STRENGTH OF THE EVIDENCE

The evidence against defendant is very strong. Defendant's identity as "Dave" is established through his IP addresses and the personal information that he

---

[6] Defendant cautioned that "[t]he pictures have spread far and wide," which Minor B can take as a "compliment," and "[e]ven if [the pictures] are off the web they will still be on hard drives and thus it is only a matter of time before they pop up again."

shared with Minor A over three years, in additional to the child pornography compiled in his home, as discussed above.

### A. Defendant's identity as "Dave" is established by the Internet Protocol addresses used to access Snapchat and Kik accounts.

Snapchat and Kik records show that it was defendant using the accounts that "Dave" used to victimize Minor A. Snapchat records show that the account for Snapchat username b88785 was logged into the IP address assigned to the Niles Residence during periods when defendant was on break from law school, and from January 2017 to July 2017, after he stopped attending.

In addition, during the time periods when defendant was attending law school, Snapchat records show that b88785 was using at least three IP addresses with a geolocation assignment of New York City, according to the internet service provider who owns those IP addresses. Defendant had an account with that internet service provider at his apartment in New York City.[7] One of those three IP addresses, 68.174.68.21, was also used for the Kik account name "sevendollarcab" in 2015.

Although defendant did not use his real name for his Kik and Snapchat accounts, those three New York City IP addresses appear on other accounts that he held in his name. Defendant used IP address 68.174.68.21 to order items through Amazon with an account in his name and address. All three of those IP addresses

---

[7] The New York City internet service provider did not have records of what IP addresses were assigned to defendant's specific account. The service provider for the Niles Residence, by contrast, supplied the "unique IP directly provision to the account," which appears throughout the Snapchat records.

10

show up on defendant's iCloud account during 2014 and 2015; the account is in his name and email address.

### B. Defendant shared personal information with Minor A that is tied back to him.

In addition, Minor A recalled specific things that "Dave" told her that have been linked to defendant. To give a few examples:

- Minor A recalled Dave telling her about an art gallery ("Art Gallery A") with locations in New York City that he went to. Defendant took an art law class in the fall of 2014, and the class took a field trip to Art Gallery A. The following semester, defendant took another art law class in which he studied lawsuits involving Art Gallery A.

- Minor A recalled that Dave told her that he liked Edward Hopper's 1939 painting *New York Movie*. When he was a senior at University A in 2012, defendant wrote a short story for his creative writing thesis where the narrator discusses Edward Hopper with a female, and tells her that he has a print of *New York Movie* in his apartment, before having a sexual encounter with her.[8]

- Minor A recalled that Dave was "obsessed with" an actress ("Actress A") and told Minor A that he went to see Actress A with her band in concert. Ticket vendor records show that defendant purchased tickets to see Actress A's band at a small concert venue in New York City in 2014. In addition, law enforcement recovered a hard drive with pictures of Actress A from the Niles Residence.

Defendant shared additional information that corroborates his identity as the perpetrator, such as music and film interests that correspond to books, posters, and music in the Niles Residence.

---

[8] Another short story in the thesis, *Pics*, refers to the protagonist "jerking off" to internet porn, including private nude photos of a female in her bathroom. He later recognizes the female in a supermarket, and wonders what would happen if he "whipped out his mobile, pulled up her pictures, and showed them to her..... Just what would she do to keep them between the two of them?" *Pics* also refers to the "Silk Road" website, which was active on the "dark web" at the time.

11

### IV. NATURE AND CHARACTERISTICS OF THE DEFENDANT

Defendant is much more sophisticated with computers and the internet than the average child pornography defendant. As his messages to Minor B show, defendant has been researching minors and collecting child pornography on the internet for at least ten years. Defendant described himself as a "proficient internet researcher" in his law school application.

During law school, defendant joined the "Cyber Law Committee," studied cyber-security, legal issues affecting cloud storage, "government device hacking" (which he wrote a paper on), and encryption. He was also instructing Minor A on how to set up Dropbox cloud storage accounts with temporary email addresses so that she could share the videos he demanded.

In March of 2018, after Minor A told defendant that the police were looking for him, the government installed a pen register and trap and trace device on the IP address for the Niles Residence, where defendant was living at the time with his mother. Law enforcement observed a large volume of traffic through what appeared to be a Virtual Private Network (VPN). A VPN allows an internet user to mask the ultimate destination of his or her internet activity. While there are non-nefarious uses for a VPN, VPNs can also be used by criminals who seek to hide their identity from law enforcement.

### V. LEGAL ANALYSIS

There are no set of conditions that will assure the safety of Minor A and others, and ensure the appearance of defendant as required. Given defendant's

cyber-expertise and his assertion that he saved images of Minor A on an encrypted cloud file, pretrial release would allow him to execute what he has repeatedly threatened: that he will release his child pornography collection to further victimize Minor A. Defendant also faces a 15-year mandatory minimum sentence, which creates further risk that he will try to intimidate Minor A or flee from prosecution. The presumption in favor of detention applies to both risk of flight and danger to the community. 18 U.S.C. § 3142(e)(3)(E).

### A. Defendant poses a continuing risk to Minor A and others that cannot be mitigated by pretrial supervision and conditions.

Courts have recognized that defendants who extort and collect child pornography from minors over the internet are a danger to the community that warrants detention. Psychological harm is considered a danger under the Bail Reform Act, and in cases like this, the harm is "severe and real" and the danger is "ongoing." *United States v. McIntyre*, No. 16-13, 2018 WL 385034, at \*5 (D.N.J. Jan. 10, 2018) (citing *Schenberger*, 498 F. Supp. 2d 738, 742 (D.N.J. 2007)).

In *United States v. Nunez*, 2018 WL 1026473 (E.D. Mich. 2018), for example, the court detained a defendant who "repeatedly extorted [a minor victim] to produce sexually explicit and pornographic activity and to record these activities for his own gratification" through social media. *Id.* at \*3. The defendant had no criminal history and "there [was] no evidence that [defendant] engaged in any wrongdoing" after being confronted by law enforcement. But the court held that defendant "could easily continue to inflict that harm with the click of a button, by sharing with the world the child pornography that he produced with his other victims." *Id.* at \*4;

13

*see also id.* at *3 ("just one sexually-related offense against *just one* minor is enough to imply dangerousness") (citing *United States v. Fitzhugh*, No. 16-MJ-30364, 2016 WL 4727480, at *5 (E.D. Mich. Sept. 12, 2016).

The same danger exists here. Defendant extorted child pornography from Minor A *for almost three years*, told her that he accumulated her child pornography in a cloud storage account, and threatened to post and distribute that material if she resisted his control. Because files in cloud storage can be accessed and distributed in a matter of seconds through any internet connection, pretrial release would perpetuate this threat and danger to Minor A. *Fitzhugh*, 2016 WL 4727480, at *5 (noting that it was "disturbing … that the Defendant stores child pornography in cloud-based accounts like Dropbox" because "any internet-capable device could confer access to Defendant's accounts.")

Courts have also taken into account a defendant's sophistication with computer technology in determining whether they are a danger to the community and their victims. In *United States v. Savader*, 944 F. Supp. 2d 209 (E.D.N.Y. 2013), the defendant gained access to nude photos of his victims and made extortionate threats for additional nude photographs of them. *Id.* at 210. The court noted that evidence of defendant's use of cloud storage indicates that "the defendant has possession of the cache of compromising photos, which can be accessed from any Internet-enabled device on the planet." *Id.* at 214. The court concluded that

> the defendant effectively "weaponized" these [photographs], presenting a significant risk. Given the defendant's demonstrated facility with computer technology, it would be all but impossible to fashion terms and conditions that would eliminate defendant's access to these materials. Hence, like an

14

>individual with access to a secret cache of weapons, the defendant certainly maintains the capacity to intimidate or further injure the victims until these materials can be definitively located and secured.

*Id.* Notably, in *Salvader* the defendant was charged with extortion, cyber-stalking, and unauthorized computer access; the presumption in favor of detention <u>did not</u> apply. *Id.* at 210. Here, defendant bears the burden of producing "some evidence to rebut the presumption" and even then, the presumption "continues to weigh in the balance against bail." *Diaz*, 777 F.2d at 1238; *see also United States v. Conover*, No. 12-2080, 2012 WL 4846132, at *5 (D.N.J. Oct. 10, 2012) (detaining defendant charged with receipt and distribution of child pornography, noting that defendant's "specialized computer expertise is troubling").

Courts have also recognized that neither a third-party custodian nor pretrial services can eliminate the threat posed by defendant. *Nunez*, 2018 WL 1026473, at *4 ("[G]iven the ease of accessing the internet, the Court is unconvinced that a set of conditions exists that would effectively prevent Defendant from contacting other minors for similar online chats and further exploitation of children") (citing *United States v. Runnerstrand*, 2008 WL 927774, at *3 (E.D. Mich. April 4, 2008)) (internal punctuation omitted); *Fitzhugh*, 2016 WL 4727480, at *5 (noting that while defendant's mother's efforts "are impressive," they "simply cannot guarantee that the Defendant will not be able to access the internet and further distribute images"); *United States v. Bivins*, No. 7:11-CR-19 HL, 2011 WL 2182239, at *3 (M.D. Ga. June 3, 2011) (holding "that home confinement, electronic monitoring, and a prohibition on computer possession would not deter [defendant] from

15

obtaining access to the internet," noting, "the internet is constantly becoming easier to access even if a person does not have a personal computer at home.").

The concerns of those courts have been proven by experience in this district. The defendant in *United States v. Hall*, (N.D. Ill. 16 CR 715), was charged with production and transportation of child pornography and released on bond with third-party custodians and conditions of pretrial release prohibiting internet access. (Doc. 13.) Defendant violated those conditions of release by contacting one of his minor victims, including through Kik. (Doc. 35; Doc. 72 at 3-5.) In conversations with the victim, defendant flouted Pretrial Services' inability to catch him using the internet. Judge Finnegan revoked his bond and he was later sentenced to 336 months' imprisonment. Doc. 91; *see also United States v. Shea*, 493 F. App'x 792, 793 (7th Cir. 2012) (describing similar "sextortion" defendant who was "released pending trial but did not stop. He did the same thing to four more teens").

As defendant himself knows (and made Minor A aware), it is very difficult to remove pornography from the internet once it is disseminated.[9] For this reason, conditions of release will not protect Minor A. If defendant releases her images, permanent damage will be done and bond revocation will be little consolation.

---

[9] In his 2012 short story *Pics*, see footnote 8, *supra*, defendant made this point in the context of a celebrity who "didn't want her tits plastered all over the internet," explaining "[w]hat gets put on the Internet stays on the Internet and there's not a damn thing you can do about it. The Internet is written in permanent marker" and "indelible marks never fade away completely."

### B. Defendant poses a risk of flight.

Because defendant faces a mandatory minimum sentence of 15 years for Counts Three and Six, and a sentence of ten years to life for Count One, defendant is a risk of flight in addition to being a danger to the community. *Nunez*, 2018 WL 1026473, at *3 (15-year mandatory minimum creates risk of flight); *see also Fitzhugh*, 2016 WL 4727480, at *4 ("these mandatory sentences [18 U.S.C. §§ 2251 and 2422] reflect a Congressional determination that individuals who sexually exploit minors are inherently dangerous").[10] Defendant has shown himself to be quite sophisticated in evading law enforcement over the last ten years, and he has more resources at his disposal to flee from prosecution than the typical defendant.

## VI. CONCLUSION

The continued psychological harm that defendant inflicted and continues to inflict on Minor A cannot be overstated. Minor A spent nearly three years under defendant's control, terrified that he would ruin her life. Based on his own boasts to Minor A and his sophisticated knowledge and experience with computers and the internet, the evidence shows that the defendant likely still has sexually explicit images and videos of Minor A stored in a cloud storage account or elsewhere, which only he can access. Pretrial release will only perpetuate this crime, which is why courts across the country have detained defendants in these types of cases.

---

[10] Although every case is different, sentences in other cases of "sextortion" of minors have been well over 15 years. *United States v. Wojahn*, (N.D. Ill. No. 16 CR 50005) (22 years); *United States v. Shea*, 493 F. App'x 792, 793 (7th Cir. 2012) (affirming 33-year sentence); *United States v. Saucedo*, (S.D. Cal. No. 17 CR 95) (19.6 years); *United States v. Orisakwe*, 624 F. App'x 149, 153 (5th Cir. 2015) (27 years); *United States v. Finkbiner*, (S.D. Ind. No. 13 CR 2) (20 years); *United States v. Pedersen*, (W.D. Mo. No. 10-257-CR) (30 years).

The government respectfully requests that the defendant be detained pending trial.

                                    Respectfully submitted,

                                    JOHN R. LAUSCH, JR.
                                  United States Attorney

By:   /s/ *Charles W. Mulaney*
        CHARLES W. MULANEY
        Assistant U.S. Attorney
        219 South Dearborn St., Rm. 500
        Chicago, Illinois 60604
        (312) 469-6042

Dated: October 22, 2018